IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN A. ABRAHAM, M.D.<br><br>           Plaintiff<br><br>   v.<br><br>THOMAS JEFFERSON UNIVERSITY AND THOMAS JEFFERSON UNIVERSITY HOSPITAL, INC.<br><br>           Defendants | Civil Action No.<br>2:20-cv-02967-MMB |

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO COMPEL**

**NESENOFF & MILTENBERG, LLP**
**Andrew Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Amy Zamir, Esq.**
**363 Seventh Ave, 5th Floor**
**New York, New York 10001**
**(212) 736-4500**
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. Relevant Facts and Procedural History ...................................................................... 2

   a. Relevant Facts ........................................................................................................ 2

   b. Procedural History ................................................................................................. 4

III. Defendant's Discovery Obligations ............................................................................ 5

IV. Plaintiff's Discovery Demands – The Investigative Report ....................................... 5

   1. The Court of Common Pleas, Philadelphia County has Ordered the Production of the Title IX Investigative Report in a Related Action ............................................... 7

V. Plaintiff's Discovery Demands – Prior Similar Reports ............................................. 8

VI. Conclusion .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Custom Designs & Mfg. Co.*,
  39 A.3d at 378 ............................................................................................................... 8
*Gillard v. AIG Ins. Co.*,
  15 A.D.3d 44, 52 n.8 (Pa 2011) .................................................................................... 8
*In re Grand Jury Investigation*,
  599 F.2d 1224 (3d Cir. 1979) ....................................................................................... 7
*Joe v, Prison Health Services, Inc.*,
  782 A.2d 24 (Pa. Commw. 2001) ................................................................................. 7
*Loutzenhiser v. Doddo*,
  260 A.D. 745 (Pa. 1970) ............................................................................................... 7
*McCowan v. City of Philadephia*,
  2020 WL 6485097 (E.D.Pa. 2020) ............................................................................... 7
*Melendez v. Greiner*,
  2003 WL 22434101 (S.D.N.Y. Oct. 23, 2003) ............................................................. 9
*T.M. v. Elwyn, Inc. et al.*,
  850 A2d 1050, 2008 PA Super 113 (2008) .................................................................. 9
*United States v, AT&T*,
  642 F.2d 1285 (D.C. Cir. 1980) .................................................................................... 7
*Upjohn Co. v. United States*,
  449 U.S. 383, 395 (1981) .............................................................................................. 7
*Westinghouse Elec. Corp.*
  951 F.2d at 1424 ............................................................................................................ 7
*Yocabet v. UPMC Presbyterian*
  119 A.3d. 1012 (Pa. Super 2015) .................................................................................. 7

**Rules**

26.1(f) ................................................................................................................................ 1, 9
37(a)(1) ................................................................................................................................. 9
Fed. R. Civ. P. 26(b)(1) ....................................................................................................... 5
Fed. R. Civ. P. 34 (a)(1)(A) ................................................................................................. 5

I. Introduction

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, Local Rule of Civil Procedure 26.1(f), and Paragraph (C)(1) of the Courts Pretrial and Trial Procedures – Civil Cases, Plaintiff John A. Abraham, M.D. ("Plaintiff" or "Dr. Abraham"), submits this brief in support of his motion to compel Defendants Thomas Jefferson University ("TJU") and Thomas Jefferson University Hospital, Inc. ("TJUH") ("Defendants" or "Jefferson") to produce a full and complete production of documents in response to Plaintiff's First Request for Production of Documents.

Plaintiff commenced this action against Defendants as a result of Defendants' discriminatory conduct towards Plaintiff in violation of Title IX of the Education Amendments of 1972 ("Title IX"). The allegations giving rise to the causes of action in the Complaint stem from the same occurrences which formed the bases of a Title IX complaint filed by Jane Roe[1] against Plaintiff with Defendants and the specific policies and procedures that were undertaken by Defendants in investigating, conducting a hearing and resolving the Title IX complaint.

In furtherance of investigating the purported claims of sexual misconduct Defendants hired the firm of Pietragallo Gordan Alfano Bosick & Raspanti, LLP to investigate and prepare an investigative report pursuant to its Title IX policies (the "Investigative Report"). Integral to Plaintiff's claims and allegations are the statements made to the outside investigator by the parties and witnesses as well as the Investigative Report prepared as a result of the investigation. Despite proper demand therefore, Defendant has unlawfully withheld all investigative materials, including witness statements as well as the Investigative Report, wrongly claiming that such material is covered under the attorney/client or work product privilege. As discussed more fully below, two

---

[1] Jane Roe is a pseudonym used to protect the identity of a Title IX claimant.

Pennsylvania State Courts have previously ordered Defendant to provide this report to Plaintiff in a separate litigation and the Defendant continues to refuse to provide it in that action as well.

On August 17, 2022, Plaintiff sent a detailed letter to Defendants' counsel setting forth the deficiencies in Defendants responses. See Exhibit "A". On or about September 8, 2022 Defendants responded to the deficiency letter in writing. See Exhibit "B". Thereafter a meet and confer was held between counsel to the parties on October 13, 2022. The attorney assigned to this matter for Plaintiff experienced a medical emergency requiring bedrest and then surgery on October 17, 2022 and only returned to work in a limited capacity on November 2, 2022. Notwithstanding, Plaintiff's counsel's unexpected absence Defendants have continued to withhold relevant information and responsive documents, despite their clear obligation to produce same.

Pursuant to the most recent scheduling order, fact discovery is to be concluded by December 2, 2022. Plaintiff cannot conduct meaningful depositions of the Defendant's employees and witnesses without first having the opportunity to review all responsive documents, including the Investigative Report and underlying statements and documents.

It is apparent that the parties cannot resolve this discovery dispute without the Court's intervention. Thus, Plaintiff respectfully requests this Court to compel Defendant's full and complete production of documents in response to the Discovery Demands and stay and/or extend the discovery dates in this matter to allow for a proper review of all documents prior to proceeding with depositions.

II. Relevant Facts and Procedural History

      a. Relevant Facts

Dr. Abraham was the Director of the Musculoskeletal Oncology Center at TJUH and the Associate Professor of Orthopedic Surgery and Radiation Oncology at TJU. Dr. Abraham was

2

also an employee of Rothman Institute and was the Service Chief of Orthopedic Oncology at Rothman Orthopedics.  Until the events occurred which gave rise to the allegations in the Complaint and the related Title IX complaint filed by Jane Roe, Dr. Abraham was well-liked and a highly respected member of the TJU/TJUH community.  He had never been involved in any type of disciplinary proceeding before at TJU/TJUH or elsewhere.

On or about June 23, 2018, Dr. Abraham hosted a party at his home at which Jane Roe was a guest.  Jane Roe was observed acting inappropriately and refused to leave the party when asked by Plaintiff and other guests.  Thereafter, Jane Roe insisted that Dr. Abraham consume alcohol and forced him to have a sexual encounter with her.  Moreover, she refused to leave after and insisted on spending the night in his bedroom and attempted to initiate sexual contact with him the following morning.

A few days later, Jane Roe contacted Dr. Abraham and apologized for her actions on the dates of June 23 and June 24, 2018.   She also told him that her husband knew what happened and was angry and wanted to meet with him to work something out to "make it better". Dr. Abraham realized that Jane Roe and her husband were attempting to extort money out of him.  On June 26, 2018, Dr. Abraham reported the encounter and what transpired with Jane Roe to his supervisor, Dr. Vaccaro.

Jane Roe became irate when she heard Dr. Abraham was going to report the incident and her husband left threatening messages for him on his voice mail.  Growing increasingly concerned, Dr. Abraham then left a message for Dr. Purtill.  Dr, Purtill did not return Dr. Abraham's call and Dr. Abraham then reached out to Dr. Vaccaro again, who informed him that in the interim, Jane Roe reported to Dr. Purtill that Dr. Abraham raped her.

3

Dr. Abraham thereafter received a Notice of Concern from Defendants and was placed on a forced leave of absence from TJUH and was suspended from Rothman Orthopedics. The Notice of Concern specifically mentioned that the matter was the subject of a Title IX complaint. A copy of the Notice of Concern is annexed hereto as Exhibit "C". Thereafter, Dr. Abraham was the victim of a flawed and biased disciplinary proceeding against him. Moreover, Dr. Abraham was deprived of the opportunity to fully participate in the investigation against him.

Furthermore, Dr. Abraham was not permitted to review the following information collected during the investigative stage:

a. The investigative report;
b. Witness statements;
c. The initial complaint filed with the Title IX office.

A Title IX investigation ensued and TJU/TJUH engaged the law firm of Pietragallo Gordan Alfano Bosick & Raspanti, LLP to conduct the investigation. The investigation was undertaken pursuant to TJU's Title IX policies and the purpose of the investigation was to comply with TJU's Title IX policies. Defendants have provided absolutely no evidence that the engagement of Pietragallo Gordan Alfano Bosick & Raspanti, LLP was to secure an opinion of law, legal services, or assistance in a legal matter. The investigation was not done in anticipation of litigation.

Additionally, and further relevant to Plaintiff's claims in a clear display of gender bias, Defendants failed to investigate the claim filed by Dr. Abraham against Jane Roe.

As a result of the flawed investigation and the gender biased faced by Dr. Abraham, Dr. Abraham was forced to relinquish his clinical privileges and faculty appointment at TJUH.

### b. Procedural History

On or about June 22, 2020, Plaintiff filed a complaint against Defendants under Title IX and related state law claims (ECF No. 1). Defendants filed a Motion to Dismiss, which was granted

to the extent that Plaintiff was directed to file an amended complaint within fourteen (14) days (ECF No. 12). Defendants thereafter filed a motion to dismiss Plaintiff's First Amended Complaint (ECF No. 17). The Court granted Defendants motion in part and denied the motion in part (ECF No. 21). Plaintiff is left pursuing his remaining claim of Title IX discrimination and tortious interference with business relations.

III.    Defendant's Discovery Obligations

Pursuant to the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party may seek discovery after the parties have conferred as required by Rule 26(f). Pursuant to Federal Rule 34, a party may serve non any other party a request within the scope of Rule 26(b) to "produce and permit the requesting party or its representative to inspect, copy, test, or sample … items in the responding party's possession, custody, or control," including designated documents or electronically stored information. Fed. R. Civ. P. 34 (a)(1)(A).

IV.    Plaintiff's Discovery Demands – The Investigative Report

On or about November 12, 2021 Plaintiff served his First Request for the Production of Documents (the "Demand"). A copy of the Demand is annexed hereto as Exhibit "D". Contained within the Demand is a request for the production of documents related to the Title IX investigation initiated by Jane Roe and of which Plaintiff was the subject of the investigation. See Exhibit "D" Demands nos 1-34. Also requested in the Demand is information pertaining to similar types of claims filed by members of the TJU/TJUH community. Such information is not within the custody or control of Plaintiff and critical for Plaintiff to be prove the discrimination he faced.

5

On or about January 12, 2022 Defendants served their responses to the Demands. See Exhibit "E". In response to the Demands, Defendants refuse to produce the Investigative Report and the underlying information and statements obtained in furtherance of the investigation. Defendants wrongly claim that the investigative report and underlying information is protected from discovery by the attorney/client privilege and/or the work product privilege. Plaintiff disagrees with the conclusion that information relating to Jane Roe's Complaint, the investigation and Report of Jane Roe's Complaint and Plaintiff's Title IX case are protected from discovery as the result of attorney-client privilege or work product doctrine. Specifically, the investigation was undertaken pursuant to Defendants' Title IX policies and the purpose of the investigation was to comply with said policies and **not** to secure either an opinion of law, legal services or assistance in a legal matter.

> The Third Circuit has enumerated the traditional elements of the attorney-client privilege:
>
> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979). "[B]ecause the privilege obstructs the search for the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Id.* at 1245 (quotation marks omitted). *McCowan v. City of Philadephia*, 2020 WL 6485097 (E.D.Pa. 2020). Furthermore, the party asserting the privilege bears the burden of producing facts establishing proper invocation of the privilege. *Yocabet v. UPMC Presbyterian*

119 A.3d. 1012, 1019 (Pa. Super 2015).

The Investigative Report does not satisfy the elements of attorney-client privilege. The report is not a communication which was secured for the purpose of legal services, an opinion of the law, or assistance in a legal matter. The attorney-client privilege applies only to communications, it does not protect disclosure of underlying facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The Title IX Investigative Report was prepared to TJU by an outside consultant and is not itself a communication but rather a report of facts and factual findings. Further, the report was completed to investigate a Title IX claim in furtherance of TJU's Title IX policies and procedures, not for the purposes of "securing either an opinion of law, legal services or assistance in a legal matter".

Moreover, TJU has in fact waived any claim to the attorney-client privilege. A client can waive the attorney-client privilege in a number of ways including disclosing an otherwise protected communication to a third party. *Loutzenhiser v. Doddo*, 260 A.D. 745, 748 (Pa. 1970); *Joe v, Prison Health Services, Inc.*, 782 A.2d 24, 31 (Pa. Commw. 2001). Such a disclosure "has long been considered inconsistent with an assertion of the privilege." *Westinghouse Elec. Corp*. 951 F.2d at 1424 (citing *United States v, AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). In the instant case the Title IX Investigative Report was shared not just with Rothman Institute administrators and physicians (colleagues and associates of Plaintiff), but with the entire Board of Directors of Rothman Institute. Thus, TJU has waived any claim to attorney-client privilege related to the investigative report.

1. The Court of Common Pleas, Philadelphia County has Ordered the Production of the Title IX Investigative Report in a Related Action

As a result of the false allegations levied against Plaintiff by Jane Roe and her husband and the resulting harm to Plaintiff, Plaintiff filed a complaint against them alleging, *inter alia*,

7

defamation and a scheme to extort him in the Court of Common Pleas, Philadelphia County (Case Id. 190606650) (the "State Court Action"). By motion dated April 5, 2021, defendants therein filed a joint motion to compel non-party TJU to produce the Investigative Report, the same report sought herein. By Order dated May 12, 2021, the Court of Common Pleas granted the motion and directed TJU to produce, *inter alia*, the Investigative Report. Non-party TJU appealed the lower court's decision and on October 12, 2022, the Superior Court of Pennsylvania affirmed the lower court's decision (the "State Court Appellate Decision"). A copy of the State Court Appellate Decision is annexed hereto as Exhibit "F".

In opposition to the State Court motion and appeal, TJU asserted the same arguments against disclosure as asserted herein, i.e., that the Investigative Report is protected by the attorney-client privilege. When considering the issue of whether the Investigative Report is privileged, the Court concluded as follows:

> … as the privilege applies only to communications made for the purpose of providing legal assistance, it will not protect against the disclosure of underlying facts or "protect clients from factual investigations." *Custom Designs & Mfg. Co.*, 39 A.3d at 378 (citations omitted); see also *Gillard v. AIG Ins. Co.*, 15 A.D.3d 44, 52 n.8 (Pa 2011). A fact is not transformed into privileged information "solely by virtue of its having been communicated [by] counsel." *Custom Designs & Mfg. Co.*, 39 A.3d at 378.

See Exhibit "F" p. 10. The State Appellate Court further found that although TJU engaged outside counsel to investigate the sexual misconduct claims and prepare the report, it failed to prove that the investigation and report were prepared in furtherance of providing "either a legal opinion of law, legal services or assistance in a legal matter." *Id*. at p. 11.

V.   Plaintiff's Discovery Demands – Prior Similar Reports

Contained within the Demands is Request No. 46 which demands production of, *inter alia*, "Documents and communications reflecting all reports-formal or informal-of possible sexual

8

misconduct at TJU since 2010" and Request No. 47 demands production of, *inter alia*, "Documents and communications reflecting all reports-formal or informal-of possible sexual misconduct at TJUH since 2010". Defendants object to these demands on various grounds including "that its is vague and ambiguous in that it requests all reports of 'possible' sexual misconduct, and it is unclear to what Plaintiff is referring. Defendants' objections are improper and insufficient to obviate Defendants' discovery obligations under the Federal Rules. Furthermore, Plaintiff is entitled to any documents evidencing prior complaints of a similar nature to Plaintiff's claims in the instant action. *See T.M. v. Elwyn, Inc. et al.,* 850 A2d 1050, 2008 PA Super 113 (2008). *See also Melendez v. Greiner*, 2003 WL 22434101, at *3-4 (S.D.N.Y. Oct. 23, 2003) (collecting cases).

VI.  Conclusion

For the reasons set forth herein and pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, Local Rule of Civil Procedure 26.1(f), and Paragraph (C)(1) of the Courts Pretrial and Trial Procedures – Civil Cases, it is respectfully submitted that Plaintiff John A. Abraham, M.D.'s motion seeking to compel Defendants complete production of documents in response to Plaintiff's First Request for Production of Documents should be granted in its entirety.

**CERTIFICATION PURSUANT TO RULE 26.1**

The undersigned hereby certifies that, after a reasonable effort, the parties have been unable to resolve the dispute described herein.

**Dated: November 4, 2022**                             Very truly yours,

By: /s/ *Andrew Miltenberg*
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Amy Zamir, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Ave, 5th Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
azamir@nmllplaw.com
*Attorneys for Plaintiff*

By: /s/ *Lance Rogers*
Lance Rogers, Esq.
ROGERS COUNSEL
26 East Athens Avenue
Ardmore, PA 19003
lance@rogerscounsel.com
*Local Counsel for Plaintiff*