**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN A. ABRAHAM, M.D.** | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| | : | **No. 2:20-cv-02967-MMB** |
| **THOMAS JEFFERSON UNIVERSITY** | : | |
| **and THOMAS JEFFERSON** | : | |
| **UNIVERSITY HOSPITALS, INC.** | : | |
| *Defendants.* | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR A NEW TRIAL PURSUANT TO RULE 59(A)**

1

## TABLE OF CONTENTS

**Page**

Table of Contents……………………………………………………………..….i

Table of Authorities .................................................................................................. iii

I. THE EVIDENCE ...................................................................................................2

II. LEGAL ARGUMENT ...........................................................................................2

   A. Legal Standard For A New Trial And Defendants' Rampant Waiver .................2

   B. The Trial Court Properly Excluded Certain Irrelevant, Confusing Evidence
      And There Was No Harm, In Any Event ..........................................................5

      1. The Text Messages Were Properly Precluded, And TJUH Was Permitted
         To Do What They Now Claim They Should Have Been Able To Do............5

      2. The Text Messages And Letter From Abraham's Lawyer Were Not
         "Impeachment" Evidence .................................................................................6

   C. The Jury Instructions Were Proper And Any Claim Otherwise Was Similarly
      Waived – Repeatedly ......................................................................................10

      1. Plain Error Doctrine Is Inapplicable ............................................................12

         a. Plain Error Doctrine Pursuant To Fed. R. Crim. P. 52(b)............12

         b. Even More Stringent Requisites In Civil Cases  ...........................13

         c. Further Interplay Between Plain Error Doctrine And The Type
           Of Waiver And Affirmative Disclaimer Here ...............................14

      2. The Title Ix Jury Instruction Was Proper Under Binding Third Circuit
         Law And, In Any Event, Certainly No Plain Error To Warrant A New
         Trial...............................................................................................................16

      3. There Is No Burden Shifting, In Any Event....................................................17

      4. The Third Circuit Rejected Doctrinal Tests To Prove A Claim Under
         Title IX .........................................................................................................18

   D. Fifth Amendment Instruction Was Appropriate, Agreed To, And Harmless,
      Where Defendants *Admitted To The Jury* That Abraham Had Fifth Amendment
      Rights.............................................................................................................19

E. DEFENDANTS' REQUEST TO "*CLARIFY*" THE TITLE IX "*PROCESS CLAIMS*" IS WAIVED, ABSURD, AND WHOLLY INCONSISTENT WITH THIRD-CIRCUIT PRECEDENT ......................20

F. THE TORTIOUS INTERFERENCE CLAIM AND TITLE IX CLAIM ARE SEPARATE CLAIMS – AND A WAIVED ARGUMENT NONETHELESS ...............................................................................20

G. PLAINTIFF'S COUNSELS' ADVOCACY AND PRESERVATION OF THE RECORD CANNOT BE CONSIDERED MISCONDUCT NOR WOULD IT WARRANT A NEW TRIAL – AND THIS MERITLESS ARGUMENT IS ALSO WAIVED ........................................................................21

IV. CONCLUSION ................................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*A.H. v. Minersville Area Sch. Dist.*, 408 F. Supp. 3d 536 (M.D. Pa. 2019) .................................17

*Amissah v. William Penn Life Ins. Co.,* 1993 U.S. Dist. LEXIS 5391 (E.D. Pa. 1993) .................4

*ATDAmerican Co. v. Krueger Int'l, Inc.,* 2014 U.S. Dist. LEXIS 112507 (E.D. Pa. 2014)..........10

*Becker v. Arco Chem. Co.*, 207 F.3d 176 (3d Cir. 2000).................................................................5

*Bedrosian v. IRS*, 42 F.4th 174 (3d Cir. 2022) .............................................................................17

*Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253 (3d Cir. 1995)....................................21

*Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396 (3d Cir. 2000) ............................21

*Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976 (3d Cir .1996)..........13

*Davis v. General Accident Ins. Co. of Am.*, 153 F. Supp. 2d 598 (E.D. Pa. 2001).................. 22-24

*Doe v. Univ. of Scis.*, 961 F.3d 203 (3d Cir. 2020).................................................................. 17-20

*Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016)..........................................................17,18

*Draper v. Airco Inc.*, 580 F.2d 91 (3d Cir. 1978) .................................................................. 22-24

*Dunn v. Hovic*, 1 F.3d 1371 (3d. Cir. 1993) ................................................................................23

*Elliot v. Kiesewetter*, 112 Fed. Appx. 821, U.S. App. LEXIS 21628, (3d Cir. 2004)..................13

*Fashauer v. New Jersey Transit Rail Operations*, 57 F.3d 1269 (3d Cir. 1995).................... 13-16

*Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277 (3d Cir. 1991) .................................2

*Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019) .............................................................................14

*Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336 (3d Cir. 2005)..............................14

*Government of the Virgin Islands v. Vanterpool*, 756 F.3d 157 (3d Cir. 2014) ..................... 12-13

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352 (3d Cir. 1999).....................................................3,11,22

*Inter Med. Supplies, Ltd. v. Ebi Med. Sys.*, 181 F.3d 446 (3d Cir. 1999)...............................10,11

*Klein v. Hollings*, 992 F.2d 1285 (3d Cir. 1993) ............................................................2

*Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477 (E.D. Pa. 1992)........................2

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..................................... 17-18

*Mejias v. Roth (In re Bayside Prison Litig.)*, 331 Fed. Appx. 987 (3d. Cir. 2009) ................ 22-24

*Moore v. Vislosky*, 240 Fed. Appx. 457, 2007 U.S. App. LEXIS 9285 (3d Cir. 2007)...........14,16

*Morgan v. Covington Twp.*, 648 F.3d 172 (3d Cir. 2011) ................................................6

*Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir. 1979)............................................22

*Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000) ..................................................22

*Osei-Afriyie v. Medical College*, 937 F.3d 876 (3d Cir. 1991)........................................14

*Otos Tech Co. v. OGK Am., Inc.*, 295 Fed. Appx. 514 (3d. Cir. 2008) ............................3

*Pennsylvania Environmental Defense Foundation v. Canon-McMillan School District*, 152 F.3d 228 (3d Cir. 1998)........................................................................................13

*Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444 (M.D. Pa. 2017) ........................3

*Rullo v. Univ. of Pittsburgh - of the Commonwealth Sys. Of Higher Educ.*, 2021 U.S. Dist. LEXIS 29877 (W.D.Pa. Feb. 18, 2021)...........................................................................5

*Rosales-Mireles v. United States, U.S.*, 138 S. Ct. 1897 (2018).....................................12

*Rosen v. Superintendent Mahoney SCI*, 972 F.3d 245 (3d. Cir. 2020)............................6

*Stainton v. Tarantino*, 637 F. Supp. 1051 (E.D. Pa. 1986)........................................4,21

*Thorp v. American Aviation & General Ins. Co.*, 212 F.2d 821 (3d Cir. 1954) ...........................10

*United States v. Gilmore*, 553 F.3d 266 (3d Cir. 2009) ..................................................6

*United States v. Mornan*, 413 F.3d 372 (3d Cir. 2005) ..................................................5

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940).....................................4

*United States v. Zehrbach*, 47 F.3d 1252 (3rd Cir. 1995).............................................10

*Walden v. Georgia-Pacific Corp.*, 126 F.3d 506 (3d Cir. 1997) .............................. 13-14

*Williams v. Runyon*, 130 F.3d 568 (3d Cir. 1997) ...........................................................5

*Williamson v. Conrail*, 926 F.2d 1344 (3d Cir. 1991) ................................................. 2-3

*Woods v. Burlington*, 768 F.2d 1287 (11th Cir. 1985) ...................................................4

*Yarus v. Walgreen Co.*, 738 Fed. Appx. 94, 2018 U.S. App. LEXIS 15842 (3d Cir. 2018) ... 14-15

*Yohannon v. Keene Corp.*, 924 F.2d 1255 (3d Cir. 1991) ...........................................3

## **Statutes**

Fed. R. Civ. P. 61 ............................................................................................................5

Fed. R. Civ. P. 51 ......................................................................................................10, 15

Fed. R. Ev. 607 ................................................................................................................6

Fed. R. Crim. P. 52(b) ............................................................................................. 12-13

The Court should deny Defendants' Post-Trial Motion for New Trial in its entirety where all claimed grounds have either been waived, affirmatively disclaimed, or constituted sound discretionary evidentiary rulings, which certainly did not cause any harm to Defendants and, in any event, where all facts and reasonable inferences in Plaintiff's favor are clearly sufficient for a jury to reasonably find liability.

## I.    THE EVIDENCE

Plaintiff incorporates Section I – The Evidence set forth in his Opposition to Defendants' Motion for Judgment as a Matter of Law (ECF# 156-2) as if set forth in its entirety herein.

## II.    LEGAL ARGUMENT[1]

### A. LEGAL STANDARD FOR A NEW TRIAL AND DEFENDANTS' RAMPANT WAIVER

A motion for a new trial may only be granted when: (1) there is a *significant* error of law, to the *prejudice* of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a *prejudicial* effect on the jury. *Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992). When a court is faced with conflicting evidence that is subject to two interpretations, a trial court should generally decline to order a new trial. *Klein v. Hollings*, 992 F.2d 1285, 1295 (3d Cir. 1993). A verdict must be upheld so long as it is supported by a "minimum quantity of evidence from which a jury might reasonably afford relief." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 290 (3d Cir. 1991).

When a party argues the jury's verdict is against the weight of the evidence, a new trial is proper only when the record shows the jury's verdict resulted in a miscarriage of justice or where

---

[1] Unless otherwise stated all emphasis has been added.

the verdict cries out to be overturned, or shocks the conscience. *Williamson v. Conrail*, 926 F.2d 1344, 1353 (3d Cir. 1991). The Court may not substitute its credibility determinations for those of the jury. *Williamson*, 926 F.2d at 1353. A court's discretion to grant a new trial is ***limited*** *when* the movant argues that the verdict was against the weight of the evidence. *Greenleaf v. Garlock, Inc*., 174 F.3d 352, 366 (3d Cir. 1999)). "[N]ew trials because the verdict is against the weight of the evidence are proper ***only*** when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Otos Tech Co. v. OGK Am., Inc.*, 295 Fed. Appx. 514, 517 (3d. Cir. 2008). The movant "must meet a high threshold in order to obtain this *'extraordinary relief*.'" *Ponzini v. PrimeCare Med., Inc*., 269 F. Supp. 3d 444, 575 (M.D. Pa. 2017), aff'd in part, vacated in part sub nom. *Ponzini v. Monroe Cnty*., 789 F. App'x 313 (3d Cir. 2019)).

Moreover, the failure to abide by Rule **50**'s procedural requirements "wholly waives the right to mount **any** post-trial attack on the *sufficiency of the evidence*," including on appeal. *Yohannon v. Keene Corp*., 924 F.2d 1255, 1262 (3d Cir. 1991); see also *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 364-65 (3d Cir. 1999) S. Ct. 980, 163 L. Ed. 2d 974 (2006). Thus, a party seeking a new trial pursuant to F. R. Civ. P. 59 premised on the insufficiency of the evidence ***must file*** for judgment as a matter of law before the case is submitted to a jury and after the jury returns a verdict. *Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 364 (3d Cir. 1999). Thus, whereas here, certain of Defendants grounds for a new trial are, in reality, poorly guised "insufficiency of the evidence" motions, they must have been preserved as a F. R. Civ. P. 50 motions, i.e. after evidence and before a verdict.

Furthermore, "as a rule, counsel cannot 'remain silent, interpose no objections, and after a verdict has been returned seize for the first time […] that the comments to the jury were improper

and prejudicial.'" *Stainton v. Tarantino*, 637 F. Supp. 1051, 1082 (E.D. Pa. 1986), quoting *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 238-39 (1940). This very court explained the sound policy reasons for such a rule in *Amissah v. William Penn Life Ins. Co*., 1993 U.S. Dist. LEXIS 5391, *12-14 (E.D. Pa. 1993), citing *Woods v. Burlington*, 768 F.2d 1287, 1292 (11th Cir. 1985):

> Our general rule is that a timely objection is necessary to bring to the trial court's attention alleged errors in the conduct of a trial. The rule is applied to argument of counsel, even argument found to be inflammatory, prejudicial and improper. The rule is grounded on sound policy. First, the requirement fosters judicial economy. By bringing an error to the trial judge's attention, the court has a chance to correct it on the spot. Requiring timely objection prohibits counsel from "sandbagging" the court by remaining silent and then, if the result is unsatisfactory, claiming error. Second, there are a number of good reasons why skilled trial counsel may make a tactical decision not to object to improper argument: (1) an argument that looks highly improper in a cold record may strike counsel as being wholly lacking in effect; (2) because of the "chemistry" of the courtroom counsel may think that the improper argument may offend and in effect backfire; and (3) the improper argument may open the door to a response that will be of more value than a sustained objection.

*Amissah*, at *12-14 (internal citations omitted).

It is clear that the Defendants did not argue insufficient evidence for the now claimed issues of (1) selective enforcement, (2) deliberate indifference, or (3) erroneous decision in their motion for a directed verdict at trial despite these arguments they make post-trial. Defendants made their Rule 50 motion, arguing what the law required of Plaintiff, which is totally different than what they claim now to be the applicable legal standard that Plaintiff purportedly failed to meet:

> "Plaintiff accuses the Defendants of discriminating against him on the basis of his gender. And they have not introduced any evidence that any of the Defendants' actions were based on his sex.
>
> They [Plaintiff] have to establish that the discrimination was intentional. They also have to establish that the evidence shows that both -- that the **male was treated differently or less favorably than the <u>woman</u>**, which they have not done here, and that their actions were clearly unreasonable, in light of the circumstances.

4

> And clearly unreasonable conduct must rise to a level that is more than just negligence, which the Plaintiffs have not proved here."

12/6/23 at 272:13 – 273:2. "[A] blanket statement that 'there is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff or any of the issues that counsel have set forth in this case' is "obviously insufficient." *Williams v. Runyon,* 130 F.3d 568, 571-572 (3d. Cir. 1997). Accordingly, Defendants are precluded from making any motion for new trial on those issues that should have been made in a directed verdict motion but failed to do so.

### B. THE TRIAL COURT PROPERLY EXCLUDED CERTAIN IRRELEVANT, CONFUSING EVIDENCE AND THERE WAS NO HARM, IN ANY EVENT

Motions for a new trial based on the improper introduction or exclusion of evidence are subject to the harmless error standard of Federal Rule of Civil Procedure 61, namely that "the court at every stage of the proceeding **must disregard** any error or defect in the proceeding which does **not affect the substantial rights** of the parties. Fed. R. Civ. P. 61; *Becker v. Arco Chem. Co*., 207 F.3d 176, 180 (3d Cir. 2000).

#### 1. THE TEXT MESSAGES WERE PROPERLY PRECLUDED AND TJUH WAS PERMITTED TO DO WHAT THEY NOW CLAIM THEY SHOULD HAVE BEEN ABLE TO DO

In Title IX cases, like the one at bar, Courts must properly limit evidence to that information which was relied upon and in the possession of the Defendants and Title IX investigators. *See Rullo v. Univ. of Pittsburgh - of the Commonwealth Sys. Of Higher Educ.*, 2021 U.S. Dist. LEXIS 29877, *6 (W.D. Pa. Feb. 18, 2021) ("the University will be required, at trial, to establish the appropriate foundation to support the admission of the Police Reports into evidence as to information **that the investigator relied upon**"). The District Court's decision to exclude evidence is reviewed for an abuse of discretion. *United States v. Mornan*, 413 F.3d 372, 377 (3d Cir. 2005).

5

Plaintiff briefed the issues of the text messages in his Motions in *Limine* and in oral argument before trial, which he fully incorporates as if set forth at length herein. The Court's memorandum and order regarding relevance were within its sound discretion.

Moreover, at trial the Defendants never remotely established that the Title IX Investigators, or Title IX Coordinator had the text messages between Plaintiff and Domanico or Dibadj, respectively. Defendants could not establish that this evidence was relevant, where such information could never bear on the decisions, actions and statements made by Defendants during and shortly after their investigation.

### 2. THE TEXT MESSAGES AND LETTER FROM ABRAHAM'S LAWYER WERE *NOT* "IMPEACHMENT" EVIDENCE

The Defendants' claim that the messages were somehow "impeachment evidence" is absurd. Impeachment evidence "is not offered to prove the truth of the matter asserted, but rather is offered to impugn the credibility of the person testifying." *Rosen v. Superintendent Mahoney SCI*, 972 F.3d 245, 259 (3d Cir. 2020). Federal Rule of Evidence 607 allows a party to impeach witnesses by ***contradicting*** their testimony. *United States v. Gilmore*, 553 F.3d 266, 271 (3d Cir. 2009). "Impeachment by contradiction is a means of policing the [witness]'s obligation to speak the truth ***in response to proper questions***." *Gilmore*, 553 F.3d at 271. Impeachment-by-contradiction evidence must satisfy the Rule 403 balancing requirement. *See id.* Above all, such evidence must "***meaningfully contradict[]***" a witness's testimony. *Morgan v. Covington Twp.*, 648 F.3d 172, 181 n.7 (3d Cir. 2011). Nothing about these precluded messages contradicts anything about Plaintiff's testimony.

The fundamental fallacy of Defendants' argument to the contrary, is that it is based on the patently false assertion that Plaintiff's testimony regarding what occurred at the party painted an improper picture ***because*** it went well beyond what was reported to TJUH; it did not. In fact, as

confirmed again and again in Plaintiff's testimony, what he testified to in those regards *is* what he reported to Vaccaro and Fogerty. See, e.g. 12/5/23 at 168:20-21, 177:3-5; 177:16-22; 178:9-179:13; 207:6-208:1. That fundamental fallacy of Defendants' position is far from the only one.

First, the Domanico text (which featured a crying-laughing emoji in jest) was sent by Abraham more than a month before the party in question. (Doc. 153 -3). Its contents are unrelated to the facts here; for example, Phillips was neither single nor a friend of one of his colleagues – she was the opposite, both married and a colleague. At no point in time (whether during Title IX investigation or at trial), did Jefferson ever ask Abraham whether at the party in question he was potentially interested in meeting a *single* friend of one his colleagues. That question would of course have been irrelevant, in any event, which only supports the proper preclusion of the text here. It was certainly not impeachment evidence but instead cherry-picked, out of context banter, the likes of **which Defendants <u>refused to produce</u>** in their entirety from its own witnesses in an improper attempt to make it appear that somehow, because Abraham was interested in not being a celibate the rest of his life that he somehow sexually assaulted Phillips. That is absurd.

Secondly, Abraham's messages with Dibadj are also *not* impeachment. (Doc. 153-2). Plaintiff clearly testified at trial that in *general* it would be improper for a *consensual* relationship to happen between an Attending Physician and a resident – that was not the facts here:

> Q: I'm asking you. Did you know it was wrong to have sex with Phillips? A. Right; and I really need to know a clarification on the time, because when she walked into the party, I absolutely knew that it was wrong. *I stated it to three people*, all of whom recounted that in the statement. I stated that to her, directly, three times. This is wrong. We can't do this. This is not right. She went ahead and *poured alcohol into my drinks*, and even poured *alcohol directly into my mouth* at one point.
> 12/6/23 123:24 – 125:14.

Abraham's message to Dibadj clearly says "one of my residents so I really can't anyway." Moreover, Defendants never sought to introduce the messages *after* having heard the testimony of

Abraham. They were never precluded from asking additional questions as to what Abraham did or did not tell Vaccaro or the other individuals at TJU.

Finally, the Defendants mischaracterized "Abraham's Admissions" are indeed no such thing at all – neither belonging to Abraham nor admissions of any sort. (Doc. 153-5). Defendants continued to argue at trial to the jury the false claim that Abraham participated in the Rothman investigation, but not TJUH's, while the criminal investigation was ongoing. Doc. 153-5, Ex. JX-46. This contention is *exactly* what the court let them do. The Court also ***permitted Defendants to use such documents,*** but they failed to do so. Doc. 153-5, Ex. JX-46.

JX-46 is a letter from Judson Aaron, Abraham's then-***lawyer, to Thomas Bergstrom, which very clearly*** begins – "Below are ***my*** responses to the questions…. Please understand that because of the ongoing police investigation a complete and detailed explanation of the pertinent events ***cannot*** be provided now… Abraham looks forward to giving a complete detailed statement once the criminal investigation has concluded." The Court then ***permitted*** Defendants to cross-examine Plaintiff that on the recommendation of his counsel, Mr. Aaron, that he provide information to Rothman. 12/6/23 at 202:1-12. This is ***precisely* what TJUH requested** to do with JX-46:

> THE COURT: All right. So you want to read those to the -
> MS. LORI: I -
> THE COURT: To him; ask him about them?
> MS. LORI: - want to ask him. ***Yeah, he answered those questions. He participated in that investigation. But he told Thomas Jefferson, I can't do anything***.

12/6/23 at 173:4-10. And once more:

> [Ms. Lori:] Your Honor, that is directly relevant here. It is impeachment material. It is directly on point. **He participated in Rothman's investigation, not Jefferson's**, at the same time that his criminal investigation was going on.

12/6/23 at 185:8-11.

After Defense Counsel fumbled the question a few times, the Court conducted the

questioning of Abraham and achieved the requested point. 12/6/23 at 222:23 – 226:25. And to

make it even ***clearer***, Defendants asked again and did achieve that very (albeit unpersuasive) point:

> [Ms. Lori] Have you found out, since then, that Mr. Aaron provided certain
> information to Rothman?
> THE WITNESS: Yes.
> THE COURT: Okay. All right.
> MS. LORI: Okay.
> THE COURT: Sir, and that was information about what happened at the party?
> THE WITNESS: Correct.
> THE COURT: Okay. All right. Go ahead.
> BY MS. LORI:
> Q. And you're aware he didn't provide information to Jefferson?
> A. Yes, that's correct.
> Q. That he did not provide information?
> A. That's -- sorry.
> Q. Yeah.
> A. It's correct that he did not provide any information to
> Jefferson.

12/6/23 at 227:11 – 228:3. And Defendants recognized they ***obtained the ruling they sought*** and

continued to argue over and over[2] that Abraham participated in the Rothman investigation but not

the Jefferson Investigation, which the jury found unpersuasive.

When Defendants improperly attempted to introduce such evidence during the examination

of Vaccaro – the court unequivocally informed Defendants that they ***could indeed use*** such Exhibit

with Vaccaro during the Defendants' case; but were only precluded from introducing the document

during redirect of Vaccaro as it was outside the scope of Plaintiffs cross-examination of Vaccaro:

> THE COURT: I'll sustain the objection that this is beyond the scope of direct
> [sic]. Okay?
> MS. LORI: ***That's fine***, Your Honor.

---

[2] See, e.g. 12/4/12 at 207:7-8 ("he never participated"); 12/5/23 at 20:23 – 21:4 ("Abraham chose not to participate, his friends participated"; 12/6/23 at 289:18-25 ("Did he decide to participate in the investigation? A: He declined, through Counsel"); Id at 325:21 – 326:3 ("Q: But putting aside Abraham's own lack of participation in the investigation…"); 12/7/23 at 77:1-4 ("Like, he decided not to participate."); Id at 82:13-83:9 ("…we know Abraham didn't participate in the investigation.")

> THE COURT: If you want to call this witness in part of your own case to go over this, we can cross that bridge when we come to it.

12/5/23 at 285:4-13.  Defendants simply never sought to do so. In addition to Vaccaro, Defendants could have called Aaron to testify as a witness to JX-46 and the history of the purported "participation" but elected not to do so.

Suffice it to say, the "impeachment" Defendants claim they needed to make, was made over and over – and to the extent it was not, that was Defendants' choice. The jury found it unpersuasive, and so must the Court.

## C. THE JURY INSTRUCTIONS WERE PROPER AND ANY CLAIM OTHERWISE WAS SIMILARLY WAIVED - REPEATEDLY

Defendants' waivers are like onions – they have layers.

First, no party may assign error to jury instructions unless he objects thereto, stating the matter objected to and the grounds of his objection. F.R. Civ. P. 51. See also, *United States v. Zehrbach*, 47 F.3d 1252, 1260 (3rd Cir. 1995) ("Where a party has not made a clear, **specific objection to the _charge_** that he alleges is erroneous at trial, he waives the issue on appeal…"). Rule 51 admits a *narrow* exception where review is necessary to correct a plain error that would avoid a "gross miscarriage of justice." *Id.*[3] The purpose of this rule is to give the trial court an opportunity to reconsider its charge and, if necessary, to correct it. *Thorp v. American Aviation & General Ins. Co.*, 212 F.2d 821, 825 n.4 (3d Cir. 1954). Applying this rule, the Third Circuit has clearly held that failure to object at the time the jury received proposed jury instructions <u>or</u> proposed verdict sheet constitutes a waiver of this objection. *Inter Med. Supplies, Ltd. v. Ebi Med. Sys.*, 181 F.3d 446, 463 (3d Cir. 1999); see, also, *ATDAmerican Co. v. Krueger Int'l, Inc.*, 2014 U.S. Dist. LEXIS 112507, *13 (E.D. Pa. 2014) (citing, *Inter Med. Supplies, Ltd., supra*, objections

---

[3] And, as set forth, *infra*, in § II(C)(3), the doctrine is unavailable here for several reasons.

to charge waived for two reasons where not only did complaining party fail to object to the Court's jury interrogatories but "the precise question on which the jury concluded its deliberations was one proposed by [verdict-loser] itself" in its proposed interrogatories).[4]  Thus, Jefferson's failure to object to the Court's alleged erroneous jury charge is waiver and forecloses review and so too is the lack of preservation of any issue in its proposed jury verdict sheet.

The second layer of waiver is that certain of Defendants' claim for new trial, premised on purported improper jury instructions, are in fact poorly guised "insufficiency of evidence" arguments, which are also waived.  See, *Greenleaf v. Garlock, Inc*., 174 F.3d at 364-65 (3d Cir. 1999) (The failure to abide by Rule 50's procedural requirements "wholly waives the right to mount ***any*** post-trial attack on the sufficiency of the evidence"). Thus, where Defendants continue to peddle insufficiency of the evidence arguments in their Rule 59 Motion, the Court must consider whether those arguments were made as part of any Rule 50 motion – and here they most certainly were not. Accordingly, Defendants are foreclosed from making any claim for new trial premised on insufficient evidence and *factual* arguments, which they were required to make in a Rule 50 motion after evidence before a verdict. See, (ECF 153-2):

- § II(F) – "Title IX Jury Instruction Given was Fundamentally Erroneous, Incomplete and Misleading" – e.g. "As far as Jefferson knew at the time…" See, ECF# 153-2 at p. 16.

- § II(G)(1)-(5) – "Other fundamental errors with the jury instructions" – e.g. "Jefferson adduce evidence at trial – indeed, Abraham himself admitted…" See, ECF# 153-2 at p. 20; see, also, *id* at p. 22 ("Jefferson presented ample evidence that it acted reasonably…"); see, also, *id* at p. 23 ("having allowed Abraham to use the criminal investigation as an excuse…"

   Waiver aside, Defendants' grievances are meritless, as set forth *infra*.

---

[4] The Court even reminded Defendants of their obligation to object to any charge. "At the end of the charge, I'll have you come to sidebar. And you can make any objection or exception you want, or tell me that I missed something, ***as usual***. All right." 12/8/23 at 54:13-16.

1. **PLAIN ERROR DOCTRINE IS INAPPLICABLE**

Defendants seek to invoke the Plain Error Doctrine to carry their Rule 59 Motion. Accordingly, by seeking to invoke such a drastic measure (comprising more than half of their claimed grounds for new trial), Defendants admit to their waivers. To appreciate the absurdity of Defendants' attempt to invoke Plain Error Doctrine under this record, a review of the difference between the doctrine's availability in a criminal versus civil case and the policy considerations for its application is warranted; it is obvious that even if the Court were to apply the more *lenient* standard available in a criminal case, TJUH would still woefully fail to meet such standards. Defendants have made no attempt to set forth the exacting standards for Plain Error Doctrine precisely because it precludes its application here under this record.

a. **Plain Error Doctrine Pursuant to Fed. R. Crim. P. 52(b)**

"[Fed. R. Crim. P] 52(b) provides that a court of appeals may consider errors that are plain and affect substantial rights, even though they are raised for the first time on appeal." *Rosales-Mireles v. United States*, U.S., 138 S. Ct. 1897, 1903 (2018).[5] The standard to satisfy the doctrine is highly exacting, and on its face could not be satisfied here:

> [Fed. R. Crim. P] 52(b) provides a court of appeals with a *limited* **power** to correct errors that were forfeited because they were not timely raised in district court … Under this standard, "an appellate court **may**, under its **discretion**, correct an error not raised at trial **only** where the appellant demonstrates: (1) there is **an 'error**'; (2) the error is "**clear or obvious**, *rather* **than subject to reasonable dispute**'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it '*affected the outcome* of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. [258, 262 (2010)]. … The Supreme Court has elaborated upon the "**clear or obvious**" standard in the seminal

---

[5] In discussing the doctrine, *Rosales-Mireles* observed that it "repeatedly has reversed judgments for plain error on the basis of **inadvertent or unintentional errors of the court or the parties below**." *Id*. at 1906. Again, this clearly does not describe the record here, where the Court asked if there was any burden shifting in this type of case and Defense counsel affirmatively and without qualification said there was not.

case of *United States v. Olano* [507 U.S. 725, 731-37 (1993)]. There, the Court clarified that a court of appeals **cannot** correct an error pursuant to Rule 52(b) unless the error *is clear under <u>current</u>* law." *Id*. at 734.

*Government of the Virgin Islands v. Vanterpool*, 756 F.3d 157, 162 (3d Cir. 2014).

### b.  <u>Even More *Stringent* Requisites in Civil Cases</u>

"While we have recognized that the concept of plain error **may** be applied in the civil context, the exercise of such power is **reserved for '*serious and flagrant*' errors jeopardizing** '**the integrity of the proceeding**.'" *Elliot v. Kiesewetter*, 112 Fed. Appx. 821, 824 (3d Cir. 2004) (*quoting, Pennsylvania Environmental Defense Foundation v. Canon-McMillan School District*, 152 F.3d 228, 234 (3d Cir. 1998) (and *citing*, *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 520-21 (3d Cir. 1997). *See, also, Pennsylvania Environmental Defense Fund, supra*, 152 F.3d at 234 ("…The **clear deviation** from an established legal rule can qualify as plain error. Of course, this is **a power we exercise only 'sparingly**.' *See Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 993-94 (3d Cir .1996)." As detailed at more length in *Walden v. Georgia-Pacific, supra*:

> The basis for our review of the statements at issue[6] is Fed. R. Evid. 103(d)[...] The Advisory Committee notes to Rule 103(d) indicate the wording of the rule is taken from Rule 52(b) of the Federal Rules of *<u>Criminal</u>* Procedure. Accordingly, we have taken our guidance on our construction of the civil plain error standard from the Supreme Court's interpretation of the criminal standard. *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1289 (3d Cir. 1995).
>
> "…The [Supreme Court] set forth three requirements for a plain error challenge to succeed. **First**, there must be an **actual error**—a deviation from or violation of a legal rule. **Second**, the error **must be *plain***; that is, **clear and obvious** under current law. **Finally**, the error must affect substantial rights. In other words, the error must be **prejudicial** and must have affected the outcome of the district court proceedings …

---

[4] The issue in *Walden*, a Title VII case for retaliatory discharge, concerned the district court's exclusion of remarks by non-decision making employees as evidence of retaliatory discharge. The Third Circuit agreed with appellant that such exclusion was error—**but** this was not enough to satisfy the requisites for relief under the plain error doctrine.

*Walden, supra*, 126 F.3d at 520-21. Citing, *Olano,* 507 U.S. at 732-34. *See, also, Forrest v. Parry*, 930 F.3d 93, (3d Cir. 2019) (when underlying requisites of the doctrine are met, "***even then*** we exercise our power to reverse '**sparingly**' —that is, **only** for '**serious *and* flagrant**' errors **jeopardizing** 'the integrity of the proceeding.' *Pennsylvania Environmental Defense Foundation*[, *supra*, 152 F.3d at 234]."[7]

### c.   Further Interplay Between Plain Error Doctrine and the Type of Waiver and Affirmative Disclaimer Here

Although application of the plain error doctrine assumes waiver – the Third Circuit has repeatedly declined to exercise its discretionary power under the doctrine ***because*** of waiver; and the reasoning of these cases would be even more appropriately followed here, where the waiver was not, as in those cases, a mere failure to object, but was Defendants affirmative, made with certainty and without qualification, that there is **no** burden shifting under Title IX—that is, that the legal issue that was the subject of the Court's question to counsel was, in fact, **not** an issue, at all. See, Def. Proposed Jury Instr. (ECF #106) (No mention of burden shifting or doctrinal tests) and Tr., 12/5/23 at 92:15-21 ("This is **not** a burden shifting to anybody" and "[b]urden's **not shifted** at all.")

In *Yarus v. Walgreen Co.*, 738 Fed. Appx. 94 (3d Cir. 2018), the Court found that the jury instructions under review ***were*** **erroneous**, but, following established case-law, held this would *not* be considered plain error under the doctrine **because** of defendant's *failure to object* that deprived the district court of the opportunity to consider and rule on the issue, specifically in light

---

[5] *And see, Moore v. Vislosky,* 240 Fed. Appx. 457, at *471 (3d Cir. 2007), discussed <u>infra</u> ("**plain error review** "'**should be exercised *sparingly*'** and 'should ***only*** be invoked **with *extreme caution* in the civil context**.' *Franklin Prescriptions, Inc. [v. N.Y. Times Co.,* 424 F.3d 336, 341 (3d Cir. 2005)] (*quoting Fashauer,* [*supra*,] 57 F.3d at 1289)"). *Osei-Afriyie v. Medical College*, 937 F.3d 876, 882 (3d Cir. 1991) ("[t]he Supreme Court has cautioned that the doctrine is to be used 'sparingly,'…and only where the error was sure to have had 'an unfair prejudicial impact on the jury's deliberations')(internal citations omitted).

of the important policy objectives served by providing that opportunity that was not provided—as

follows:

> On appeal, Dr. Yarus objects to the District Court's decision to have the jury
> determine whether the alleged statements were false statements of fact rather than
> statements of opinion. Indeed, Dr. Yarus is **correct** that "whether a particular
> statement is opinion or fact is a question of law for the trial court." He also contends
> that the jury instructions placed the burden on him to prove falsity of the defamatory
> statement. ***However, because he did not object***, we ___must___ review the District Court's
> decision for plain error … Under this standard, "we will reverse the trial court only
> where a plain error was **fundamental *and* highly prejudicial**, such that the
> instructions failed to provide the jury with adequate guidance **and** our refusal to
> consider the issue would result in a miscarriage of justice." (internal citations
> omitted)

> Although the questions on the verdict sheet ***were* legally incorrect**, their inclusion
> as instructions to the jury did **not** constitute plain error. *Fashauer v. New Jersey
> Transit Rail Operations*, 57 F.3d 1269, 1288-89 (3d Cir. 1995) … We have stated:

>> While **ordinarily** an [i]ncorrect jury instruction as to burden of
>> proof ***is* fundamental and highly prejudicial** and requires a new
>> trial, that principle ***assumes*** that **the issue properly has been
>> preserved** for appeal …

>> We repeatedly have stressed the important policy objectives served
>> by Rule 51.[8] The rule affords the trial judge an opportunity to correct
>> any error that may have been made in the charge before the jury
>> begins its deliberations…Thus, Rule 51 is **consistent with the
>> general rule** that an appellate court will *not* **predicate error on
>> an issue upon which the district court was *not* provided an
>> opportunity to rule**. **We have followed this proposition strictly**,
>> and have refused to consider newly developed arguments
>> concerning [a] jury charge deficiency.

> *Fashauer*, 57 F.3d at 1288-89 (internal quotation marks and citations omitted). We
> therefore decline to grant Dr. Yarus relief because the flaws in the jury verdict sheet
> did not amount to plain error.

*Yarus, supra*, 738 Fed. Appx. at *98-99, 2018 U.S. App. LEXIS 15842, at **6-**8.

---

[8] That Rule provides, in pertinent part, that "a party may assign as error: … an error in an instruction actually given,
***if* that party properly objected**." Fed. R. Civ P. 51(d)(1)(A).

Similarly, in *Moore v. Vislosky*, 240 Fed. Appx. 457 (3d Cir. 2007), even though the Third Circuit found plain error existed, it declined to grant relief under the doctrine **because, *due to defendant's failure to object*, *and* the circumstances of that failure**, the error was **not** deemed fundamental or highly prejudicial to defendant's rights:

> ***However***, we **decline to exercise our discretion to reverse** the District Court ***because*** we believe **the error was *not* fundamental or highly prejudicial to Vislosky's rights**. Vislosky's **trial counsel had ample opportunity to request a clear and convincing evidence instruction** before the jury began its deliberations, either at the charge conference or immediately after the deficient jury charge was given. **At this time, the error could have been easily corrected by the District Court** before a verdict was reached. **Instead**, Vislosky ***chose*** not to raise an objection until ***after*** a verdict had been entered against her and the District Court had denied one round of post-trial motions. **In declining to reverse, we continue to strictly follow the proposition**, embodied in Rule 51, **that "an appellate court will *not* predicate error** on an issue upon which the district court **was *not* provided an opportunity** to rule." *Fashauer*, 57 F.3d at 1288.
>
> We believe **it would be prejudicial and fundamentally unfair *to Moore* to require him to re-litigate the case**. The District Court did **not** affirmatively mislead the jury into thinking that a lower burden of proof applied in this case. Rather, the District Court gave an **otherwise accurate** and comprehensive jury charge, in which it instructed the jury on the definition of actual malice and told the jury at least four times that the burden rests with Moore to prove his case. Moreover, in light of Vislosky's obstinate refusal to cooperate with the discovery order in the proceedings below, this Court is wary of exercising discretion in her favor. **Notwithstanding the importance of proper instructions on the burden of proof, on *this* particular record, the error did *not* affect the integrity of the trial**, and we decline to reverse the District Court.

*Moore, supra*, 240 Fed. Appx at 470-472.

### 2. THE TITLE IX JURY INSTRUCTION WAS PROPER UNDER BINDING THIRD-CIRCUIT LAW AND, IN ANY EVENT, WAS CERTAINLY NO PLAIN ERROR TO WARRANT A NEW TRIAL

As to the general law of Title IX, Plaintiff incorporates his Memorandum of Law in Opposition of to Defendants Post-Trial Motion for Judgement as a Matter of Law, Section II(B) as if set forth at length herein. The Third Circuit adopted a clear and straightforward standard to succeed on a claim under Title IX: "[Did] the University discriminate[] against [the Plaintiff] on

the basis of sex?" *See Doe v. Univ. of the Scis.*, 961 F.3d 203 (3d Cir. 2020). In doing so, the Third Circuit expressly **rejected** all "doctrinal tests" that Courts had previously ascribed to Title IX actions. *Id.* at 209 ("We agree with the Seventh Circuit and 'see no need to superimpose doctrinal tests on the [Title IX] statute."). This Honorable Court has already recognized that *Doe v. Univ. Of the Scis.* "did more than clarify existing law, **it altered it**" and **only** reviewed Plaintiff's legal proofs under the *Doe v. Univ. Of the Scis.* framework. *Id.* at 9. Thus, it is well settled at this juncture that the Court's jury instruction properly stated the change in the law by *Doe v. Univ. Of the Scis.* and complied with the well-recognized law-of-the-case doctrine. *Bedrosian v. IRS*, 42 F.4th 174, 181 (3d Cir. 2022) (the law of the case doctrine "prevents reconsideration of legal issues already decided in earlier stages of a case.")

### 3.  THERE IS NO BURDEN SHIFTING, IN ANY EVENT

Defendants seek to employ the burden shifting framework from *A.H. v. Minersville Area Sch. Dist*. However, *A.H.* is inapposite and only further supports the Court's proper jury instruction and compels swift denial of Defendants' motion:

> However, despite Plaintiff's application of *McDonnell Douglas* in her brief in support of summary judgment, **Plaintiff has cited no case, nor has the Court found any, where the burden shifting analysis set forth in *McDonnell Douglas* has been applied in a Title IX case at the summary judgment stage where a student is alleging that a school intentionally discriminated against him or her through a policy solely on the basis of his/her sex**. In addition, no case involving a transgender student's right to use the school restroom or locker room facility corresponding to his/her gender identity has incorporated such a legal theory into its analysis. Nonetheless, to the extent it is relevant, the Court finds the *McDonnell Douglas* analysis does not alter its conclusions herein.

*A.H. v. Minersville Area Sch. Dist.*, 408 F.Supp. 3d 536 (M.D.Pa. 2019). Indeed, the trial court in *Doe v. Univ. Of the Scis.,* expressly **refused** to employ the Title VII burden shifting framework.

(2019 U.S. Dist. LEXIS 125592 (E.D. Pa. 2019) (Sanchez, C.J.), *reversed on other grounds*, 961

F.3d 203 (3d Cir. 2020). To that end the Court noted:

> The Court **declines** Doe's invitation to **graft** the burden-shifting
> **analysis required in Title VII cases by** *McDonnell Douglas Corp.*
> *v. Green*, **411 U.S. 792 (1973), onto this Title IX claim**. Although
> the Second Circuit in *Doe v. Columbia*, 831 F.3d 46, 55-56 (2nd Cir.
> 2016), suggested this was appropriate, the Third Circuit has not yet
> addressed this issue and Doe has offered no compelling rationale for
> this Court to do so in absence of further guidance.

*Id.* at \*7, fn. 7.[9]

### 4.   THE THIRD-CIRCUIT REJECTED DOCTRINAL TESTS TO PROVE A CLAIM UNDER TITLE IX

Defendants made their Rule 50 Motion at trial on 12/6/23, arguing what the law required

of Plaintiff – totally different than what they claim now to be the applicable standard. Per TJUH

Counsel on 12/6/23:

> "Plaintiff accuses the Defendants of discriminating against him on the basis of
> his gender. And they have not introduced any evidence that any of the
> Defendants' actions were based on his sex.
>
> They [Plaintiff] have to establish that the discrimination was intentional. They also
> have to establish that the evidence shows that both -- that the **male was treated**
> **differently or less favorably than the** **woman**, which they have not done here,
> and that their actions were clearly unreasonable, in light of the circumstances.
>
> And clearly unreasonable conduct must rise to a level that is more than just
> negligence, which the Plaintiffs have not proved here."

12/6/23 at 272:13 – 273:2.

The Third Circuit adopted a clear and straightforward standard for Plaintiff to meet to

succeed on a claim under Title IX: "[Did] the University discriminate[] against [the Plaintiff] on

the basis of sex?" *See Doe v. Univ. of the Scis.*, 961 F.3d 203 (3d Cir. 2020). In *Univ. of the*

---

[9] Of course, this same law further shows the fallacy of any attempt by Defendants to meet the first and second
***necessary*** requisites of the plain error doctrine, discussed above, that is (1) that there ***was*** error; and (2) that this is
***clear and obvious*** under ***current*** law.

*Sciences*, the Court expressly **rejected** all "doctrinal tests" that Courts had previously ascribed to Title IX actions. *Id.* at 209.

As already detailed in Plaintiff's contemporaneously filed Response in Opposition to Defendants' Post-Trial Motion for Judgment as a Matter of Law (ECF# 156 at, *inter alia*, II(B)(2)) the evidence at trial of Defendants' gender bias was not only sufficient, it was overwhelming.

### D. FIFTH AMENDMENT INSTRUCTION WAS APPROPRIATE, AGREED TO, AND HARMLESS, WHERE DEFENDANTS *ADMITTED TO THE JURY* THAT ABRAHAM HAD FIFTH AMENDMENT RIGHTS

Waiver aside, as to the claimed error in charging on the Fifth Amendment, it was neither error nor did it cause any harm. Counsel for Defendants even told the jury that "he has a Fifth Amendment Right not to participate" (12/3/23 at 41:22-23) but instead argued that Plaintiff should not get to hide behind the privilege, because claiming he participated in the Rothman Investigation. See, § (II)(B)(2), *supra*. Then, in discussing the proposed jury instruction **Defense Counsel** *agreed* **with the Court's proposal of reading a charge on the Fifth Amendment** and then allowing the jury to decide if it should apply based on Counsel's argument. In sum, "

> THE COURT: That's all right. Okay. So, he – **I think** it would be helpful to the jury, since the Fifth Amendment does exist and it is a legal issue, and there's a lot of caselaw about it, Supreme Court and otherwise, **that it would be appropriate to tell the jury that the Fifth Amendment does allow a person who is under criminal investigation not to speak about it**. […]
> **THE COURT: You think I can say that?**
> […]
> **MR. HARVEY: *Yeah.***
> […]
> **MR. HARVEY: Judge -- the jury heard what they heard**. Okay? Like - we should **just - leave it with the - jury. Okay? I mean - they - heard it. At - some point, his exposure to criminal liability ended. Okay? And what he did after that, like, they should -- like, that's the appropriate grounds for both of us to argue. Okay?**
> THE COURT: ***Exactly,*** all right. Okay.  **I'll do that.**

12/5/23 at 24:24 – 28:10 (emphasis added) (statements consolidated and interruptions omitted).

The Court did "***exactly***" as Defendants proposed. And the Court's instruction here was merely an

instruction that under the Constitution "a person who is under investigation…has a right to invoke

the privilege against self-incrimination, if they want to." 12/5/23 at 110:5-9. This is precisely what

Defendants' argued – namely, that Plaintiff could have participated in the Title IX investigation if

he "want[ed] to" but elected otherwise. Any claim of either error or harm is meritless.

### E.  DEFENDANTS' REQUEST TO "*CLARIFY*" TITLE IX "*PROCESS CLAIMS*" IS WAIVED, ABSURD, AND WHOLLY INCONSISTENT WITH THIRD-CIRCUIT PRECEDENT

This argument is also waived. Moreover, disturbing a jury verdict, *as part of a motion for*

*new* *trial*, only to then ask the Third Circuit to weigh in, is illogical and wholly inconsistent with

any jurisprudence. Defendants cite no law to suggest the standard assumption that a jury verdict is

proper should be disturbed to "clarify" a waived legal issue; and no law needs clarification. See,

*generally*, *Doe v. Univ. of the Scis.*, 961 F.3d 203, 209 (3d Cir. 2020). The Third Circuit

pronouncement in *Doe v. Univ. Of the Scis.*, already provided the appropriate "clarification" the

Defendants purport to seek. This Honorable Court has already recognized such:

> District Courts have affirmed that *USciences* "**did more than clarify** existing law, it altered it."

*See* September 10, 2021 Memorandum ECF#21 at pg. 9 (emphasis added).

### F.  THE TORTIOUS INTERFERENCE CLAIM AND TITLE IX CLAIM ARE SEPARATE CLAIMS – AND THIS DEFENSE ARGUMENT IS WAIVED NONETHELESS

Similarly, Defendants also waived this argument. The Court gave all parties an opportunity

to object to all verdict slips and the Defendants did not do so for either liability or damages (12/8/23

at 48:21 – 51:21). Perhaps most remarkably, the Defendants own proposed verdict slip has ***both a***

20

*Title IX and Tortious Interference claim* and only *a single line item* for compensatory damages. See, Doc 105, p. 2. This argument is waived.

The jury's verdicts were entirely consistent with the law of two separate claims, in any event. Moreover, "inconsistent jury verdicts are an unfortunate fact of life in law, and should not, in and of themselves, be used to overturn otherwise valid verdicts." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000). A new trial may not be granted based on an inconsistent verdict "'unless no rational jury could have brought back' the verdicts that were returned." *Care v. Reading Hosp. & Med. Ctr. Inc.*, 448 F. Supp. 2d 657, 662 (E.D. Pa. 2006), citing *Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005).

### G.  PLAINTIFF'S COUNSELS' ADVOCACY AND PRESERVATION OF THE RECORD CANNOT BE CONSIDERED MISCONDUCT NOR WOULD IT WARRANT A NEW TRIAL – AND THIS MERITLESS ARGUMENT IS ALSO WAIVED

Defendants fallaciously characterize Plaintiff's objections and argument (and necessary preservation of the trial record) as misconduct. They baldly claim Plaintiffs' Counsel's conduct was merely an attempt to "appeal to bias and prejudice" of the jurors, yet fail to identify what "bias and prejudice" that may be, in particular, as is required; because there is none. The cases cited by Defendants are wholly contrary to the facts here; that, presumably why Defendants do not discuss them.  The Third Circuit has expressly rejected such claims based on statements far more likely to improperly influence a verdict than those the Defendants claim to have occurred here. Furthermore, too, these arguments were waived. See, *Stainton* at 1082, *supra*.

The test for determining "whether to grant a new trial in cases involving counsel misconduct is 'whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements.'" *Road Corp. v. Bensalem Township*, 57 F.3d 253, 264 (3d Cir. 1995). Where a motion for a new trial is based on attorney misconduct, the trial court must

21

find it "reasonably probable" that the verdict was influenced by the alleged improprieties committed viewed as a whole. *Oddi v. Ford Motor Co.,* 234 F.3d 136, 146 (3d Cir. 2000); *Greenleaf v. Garlock, Inc.,* 174 F.3d 352 (3d Cir. 1999). Moreover, only "particularly egregious" errors that would result in a "miscarriage of justice" will warrant a new trial. *Mejias v. Roth (In re Bayside Prison Litig.)*, 331 Fed. Appx. 987, 989 (3d. Cir. 2009) (internal citations omitted). Failure to object to purportedly inflammatory statements "***precludes [a party] from seeking a new trial*** on the ground of the impropriety" of opposing counsel's remarks. *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979). Furthermore, no reversible error exists where movant fails to explain how a particular inflammatory remark was prejudicial. *Mejias v. Roth (In re Bayside Prison Litig.)*, 331 Fed. Appx. 987, 990 (3d. Cir. 1993). Where the statements of counsel are so tangential to the ultimate issues in the case, it is highly improbable that they had the slightest impact on the jury's verdict, particularly where the party seeking a new trial was given ample opportunity in rebuttal to clarify any argument made by counsel felt to be misleading. *Davis v. General Accident Ins. Co. of Am*., 153 F. Supp. 2d 598, 604 (E.D. Pa. 2001).

At no point in time before a finding of liability against TJUH, and even ***after*** testimony by Plaintiff on damages and ***after*** a weekend, did Defendants ever request any relief pertaining to Plaintiff's counsel's purported misconduct. There was never a request for a curative instruction, hence, this entire issue, too, is waived. Furthermore, waiver aside, the Court clearly instructed that the jurors should not pay any attention to the objections in its initial instruction in any event. 12/4/23 at 22:3-16.

Defendants cite *Draper v. Airco Inc.,* 580 F.2d 91, 94, 97 (3d Cir. 1978) to suggest Plaintiffs' Counsel engaged in "pure passion" and "blatant appeals to bias and prejudice." In *Draper*, counsel for the plaintiff committed the following improprieties in closing: (1) he

attempted to prejudice the jurors through repeated inappropriate references to the defendants' wealth compared to relative poverty of plaintiff; (2) he asserted his personal opinion of the justness of his client's cause; (3) he prejudicially referred to facts not in evidence including conversations with Draper's dependent children who did not testify; and (4) without provocation or basis in fact, he made several prejudicial, "vituperative and insulting" references to opposing counsel. *Draper,* 580 F.2d at 95-96.[10] The Third Circuit has rejected subsequent comparisons of an attorneys' conduct to that in *Draper* on several occasions and even went so far as to characterize conduct – far more likely to invoke prejudice than anything Plaintiff's Counsel did here – as "zealous advocacy."

> "[Appellant Counsel] argues that [Appellee Counsel] improperly attacked his credibility, by accusing him of "spinning" evidence, "selling" the jury on facts, and suggesting that [Appellant Counsel] had a "bridge he'd like to sell you [the jury] in Brooklyn." We ***reject*** [that] analogy of these statements to the "vituperative and insulting" references in *Draper,* which we found tainted the verdict.  [W]hereas the attorney in *Draper* charged defense counsel with ethical and criminal violations, [Appellee Counsel] merely accused [Appellant Counsel] of ***zealous advocacy - a rather benign suggestion***.

*Mejias*, 331 Fed. Appx. at 989. The Third Circuit in *Mejias* also rejected claims of prejudice for reference to Appellants personnel as "*thugs*," utterance of the words "*crap*" and "*damn*," and comparison of a party to a fictional film character. *Id* at 989. See also, *Dunn v. Hovic*, 1 F.3d 1371, 1378 (3d. Cir. 1993) (in rejecting analogy to *Draper*, a "reference to 'lies told in the courtroom' *hardly qualifies* as a 'vituperative and insulting.'"); see, also, *Davis v. General Accident Ins. Co. of Am.*, 153 F. Supp. 2d 598, 602 (E.D. Pa 2001) (apologizing to jury for "ungodly boredom that [has] gone on in courtroom" considered introductory banter "with no bearing on the jury's evaluation of the evidence"). The purported 'misconduct' could just have easily backfired on

---

[10] Unlike TJUH, the defendants in *Draper* did ***object*** to the purported misconduct contemporaneously **and** requested a curative instruction, followed by motions for special instructions, which the Third-Circuit noted was as ***prerequisite*** to its consideration of the post-trial motion. See, *Draper* at fn. 2.

Plaintiff, which is precisely what Defendants suspected and ***even audibly cackled about such after***

***closings***. See, also, *Mejers* at 990 (Where counsel's outburst of "[T]hey beat our ass" was "as

likely to harm as to aid him," no prejudice could have occurred.")

Nothing in this case even remotely approaches that conduct our Courts have held does

***not*** warrant a new trial, let alone, conduct that has.

In any event, whereas here, Defendants have wholly failed to articulate how any particular

argument by Plaintiffs' counsel makes it 'reasonably probable' that the verdict was influenced by

such alleged improprieties, no reversible error can exist. See, *Mejias* at 990, *supra*. Their attempts

to attach, as exhibits, their own cherry-picked and out-of-context clips from the trial record, is

procedurally, substantively, and *fatally* deficient. Furthermore, even though Defendants never

objected, never requested a curative instruction, and the Court told the jury not to consider

Counsel's objections, Defendants still had ample opportunity in their closing to rebut any alleged

conduct or arguments by Plaintiff's Counsel and failed to do so. See, *Davis* at 604, *supra*.

This claim is frivolous.

## III.   CONCLUSION

Plaintiff respectfully requests that this Court enter an Order in the proposed form attached

hereto, denying Defendants' Motion for a New Trial Pursuant to Rule 59(A).

Respectfully submitted,

**THE BEASLEY FIRM, LLC**

BY:   /s/ *Lane R. Jubb, Jr.*
LANE R. JUBB, JR., ESQUIRE
ANDREW M. MARTH, ESQUIRE
THE BEASLEY BUILDING
1125 Walnut Street
Philadelphia, PA 19107
215.592.1000

Dated: 1 February 2024                  lane.jubb@beasleyfirm.com